**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ELIZANDA LARSEN,**<br><br>On Behalf of Herself and All Others Similarly Situated,<br><br>                      **Plaintiff,**<br><br>        **v.**<br><br>**MINDVALLEY INC.,**<br>                   **Defendant.** | Case No.: 26-cv-2426<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Elizanda Larsen ("Plaintiff"), by her undersigned attorneys, Wittels McInturff Palikovic, brings this consumer protection action in her individual capacity and on behalf of a class of consumers defined below against Defendant Mindvalley Inc. (hereafter, "Defendant" or "Mindvalley") and hereby alleges the following with knowledge as to her own acts and upon information and belief as to all other acts:

## **INTRODUCTION**

1.      This is a proposed class action lawsuit challenging Mindvalley's use of unconscionable, unfair, deceptive, abusive, and unlawful "automatic renewal" tactics to trick consumers into paying for unwanted, pricey subscriptions for wellness and self-help programs. Mindvalley intentionally misleads consumers into thinking that a subscription to a Mindvalley offering lasts only for a discrete period. The truth, however, is that Mindvalley hides inadequate "disclosures" that its subscription instead automatically renews. Mindvalley hides and/or misrepresents the material facts about its offerings both before and after consumers purchase a subscription, and any disclosures it provides are either themselves misleading, or fail to cure the omission of material facts regarding its subscriptions. Mindvalley also intentionally makes its subscriptions difficult to cancel and misleads consumers regarding its "risk-free" refund guarantee.

2.      Mindvalley offers a suite of online products and services that purport to help consumers achieve personal growth. Mindvalley calls itself "the world's most effective transformation platform" and promises "a better you every day."

3.      As more and more commerce is conducted online, many firms boost profits by enrolling customers into automatically renewing subscriptions.

1

4.      Knowing that "[b]ecause subscriptions are automatically renewed, consumers who are inertial or not fully attentive may continue to pay for services they no longer value[,]"[1] some companies—including Mindvalley—use unconscionable, unfair, deceptive, abusive, and unlawful practices in providing goods and services. For Mindvalley, this includes inadequate disclosure of recurring charges before and after purchase, an obstructive cancellation process, and "risk-free" trials that are hard to cancel and if cancelled, the refund is not honored—to lure customers into paying for subscriptions they do not actually want.

5.      To protect consumers from deceptive autorenewal practices, including those of Defendant, New York enacted its Automatic Renewal Law, Gen. Bus .L. §§ 527–527a ( "ARL"), to "end the practice of ongoing charging" of consumer payment accounts "without the consumers' explicit consent." NY LEGIS 267 (2020), 2020 Sess. Law News of N.Y. Ch. 267 (S. 1475-A).

6.      The ARL requires companies employing automatic renewal payment mechanisms to provide "clear and conspicuous" disclosures about the autorenewal plan, obtain consumers' "affirmative consent" to autorenewal, and notify customers that their subscription will renew 15 to 45 days before it does, and prohibits companies from "impos[ing] unreasonable or unlawful conditions upon, refus[ing] to acknowledge, obstruct[ing] or unreasonable delay[ing] cancellation requested or attempts to request cancellation by a consumer."

7.      Mindvalley engages in numerous deceptive tactics barred by the ARL in at least four ways.

8.      *First*, Mindvalley fails to clearly and conspicuously disclose the material terms of any automatic renewal offer, including a description of the product or service subject to renewal

---

[1] Liran Einav, Benjamin Klopack & Neale Mahoney, *Selling Subscriptions*, Nat'l Bureau of Econ. Research (NBER), Working Paper No. 31547 (Aug. 2023), https://www.nber.org/papers/w31547.

(for example, by informing consumers that the subscription will automatically renew until canceled), the amount of future charges, the frequency of charges, the deadline by which consumers must act to prevent or stop further charges, or the cancellation mechanism. For example, instead of clearly explaining to the consumer what they are actually getting into, Mindvalley provides (inadequate) fine print on its payment page. Nor does Mindvalley obtain consumers' affirmative consent to the automatic renewal offer prior to charging consumers' payment cards or third party accounts.

9.    **Second**, Mindvalley's scheme continues post sign-up. The Company's receipt and acknowledgement emails sent to consumers after they enroll in a Mindvalley subscription contain no information whatsoever on the terms of the automatic renewal agreement, the amount of future costs that will be charged, the frequency of charges, the deadline by which consumers must act to stop or prevent further charges, or the cancellation mechanism of the Mindvalley subscription.

10.    **Third**, Mindvalley imposes unreasonable and unlawful conditions upon its cancellation process, and obstructs and unreasonably delays cancellation, by requiring consumers to navigate—with no help from Mindvalley—a lengthy and confusing process of at least nine steps across at least five screens. This deliberate process obstructs consumers' cancellation efforts and leads to large numbers of unwanted automatic renewals. Mindvalley's cancellation process is neither simple nor as easy to use as the mechanism consumers use to purchase a Mindvalley membership.

11.    **Fourth**, Mindvalley either does not provide customers notice of upcoming renewals, or does not provide a renewal notice at least fifteen days but not more than forty-five days before renewal. For those consumers who do receive a renewal notice, Mindvalley fails to include instructions on how to cancel such renewal charges.

12. All Mindvalley customers face this same gantlet and need only be tricked by one of Mindvalley's traps to end up paying a hefty fee for an illegal subscription.

13. It is not happenstance that so many of Mindvalley's customers are paying for illegal subscriptions. This outcome is the desired result of Mindvalley's intentional and bad-faith design choices. Mindvalley knows its scheme is tricking customers as hundreds of consumers have complained directly to Mindvalley or via sites like Trustpilot, SiteJabber, and Reddit. Upon information and belief, Mindvalley experiences a high rate of chargebacks from consumers disputing unwanted charges caused by Mindvalley's subscription scheme, and it has developed customer service protocols specifically to deal with these complaints.

14. Despite the clear messages Mindvalley's customers are sending, Defendant continues to subject consumers to its unlawful subscription scheme and to reap significant monetary benefits from its misconduct.

15. Only through a class action can consumers like Plaintiff remedy Mindvalley's unlawful practices. Because the monetary damages suffered by each customer are small in comparison to the much higher cost a single customer would incur in trying to challenge Mindvalley's improper conduct, it makes no financial sense for an individual customer to bring his or her own lawsuit. Furthermore, many customers do not realize they are victims of Mindvalley's unlawful acts and continue to be charged to this day. With this class action, Plaintiff and the Class seek to level the playing field, enjoin Mindvalley's unlawful business practices, and recover the charges Mindvalley has imposed on them in violation of the law.

## JURISDICTION AND VENUE

16. This Court has personal jurisdiction over Defendant because it conducts substantial business in New York, has sufficient minimum contacts with this state, and otherwise purposely

avails itself of the privileges of conducting business in New York by marketing and selling products and services in New York. Further, the injuries to New York consumers that Plaintiff seeks to prevent through public injunctive relief arise directly from Mindvalley's continuing conduct in New York, including, but not limited to, directing its subscription scheme at New York consumers.

17. This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Mindvalley.

18. This Court has original subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act. However, if the Court determines that it lacks original jurisdiction over any claim in this action, it may exercise supplemental jurisdiction over Plaintiff's claims under 28 U.S.C. § 1367 because all of the claims arise from a common nucleus of operative facts and are such that Plaintiff ordinarily would expect to try them in one judicial proceeding.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(2). Substantial acts in furtherance of the alleged improper conduct occurred within this District, as Plaintiff resides in this District, and Mindvalley resides in this District for venue purposes. *See* 28 U.S.C. § 1391(c)(2).

## **PARTIES**

20. Plaintiff Elizanda Larsen is a citizen of New York.

21. Plaintiff Larsen is a consumer who was victimized by Mindvalley's unlawful subscription scheme, suffered ascertainable injury in fact, and lost money because of Mindvalley's violations of New York consumer protection statutes and the common law.

22.　　Defendant Mindvalley Inc. is a Delaware corporation with its principal place of business in Kuala Lumpur, Malaysia, and an office at 7302 Royal Oaks Ct., Pleasanton, CA 94566. Mindvalley offers online courses in a variety of areas loosely centered on wellness and personal growth. Representative courses include:

- The "Silva Ultramind System," taught by Mindvalley's Founder and CEO, Vishen Lakhiani, who promises consumers will "[l]earn to naturally access alpha, theta, and delta brainwave states to channel your mind's full creative potential";[2]

- "The Art of Manifesting," which promises "breakthroughs" such as "being able to create visions so clear and powerful, they become inevitable," and "[k]nowing how to bend the fabric of time and space to your desires";[3] and

- "Quantum Jumping," which claims to teach consumers to "enter the alpha level of mind: where you visualize yourself soaring through the multiverse, and meeting alternate versions of you" and "traveling through time, and meeting yourself in past lives."[4]

## FACTUAL ALLEGATIONS

### A.　　Background on the Subscription e-Commerce Industry

23.　　The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[5] The sector "has exploded in recent years, by one estimate growing by over 400% over the past decade," such that "subscription revenue is expected to reach $1.5 trillion" in 2025.[6]

---

[2] https://home.mindvalley.com/quests/en/ultramind.

[3] https://home.mindvalley.com/quests/en/manifesting.

[4] https://home.mindvalley.com/quests/en/quantum.

[5] *See* Sam Saltis, *How to Run an eCommerce Subscription Service: The Ultimate Guide*, CORE DNA, https://www.coredna.com/blogs/ecommerce-subscription-services.

[6] Emily Stewart, *Companies Love Trapping People in Subscriptions. Savvy Consumers Are Fighting Back.*, Business Insider (July 24, 2025), https://www.businessinsider.com/free-trials-consumers-subscription-economy-2025-7.

24.     Though it provides convenience to some consumers, there are well-documented downsides associated with the subscription-based business model. In particular, retailers may realize far more profit by locking consumers into recurring subscriptions than by working to improve their products or focusing only on charging consumers for products they actually want. One paper "estimates that inattention and more passive renewal lead to a substantial increase in revenues for subscription services, which could be as high as ***three times greater*** than the revenues they would receive if subscribers were fully attentive and made an active renewal decision each month."[7]

25.     Recognizing the profitability of recurring subscriptions, many companies utilize deceptive sign-up processes designed to lure consumers into enrollment, and misleading cancellation processes designed to prevent them from canceling or, as here, securing refunds. As one recent report observed, "[c]ompanies have gotten increasingly savvy at trapping consumers in what are known as 'dark patterns,' drawing them in with a shiny new product or discounted subscription that ends up being burdensome to get out of."[8]

26.     The term "dark patterns," first coined in 2010 by the cognitive scientist Harry Brignull, is a term of art in user-experience ("UX") design, referring to interface strategies intentionally crafted to manipulate consumer choice. The Federal Trade Commission defines them as "practices that trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[9] A report by Nielsen Norman Group, a globally-recognized UX

---

[7] *See* Einav et al., *supra* n.1, at 17.

[8] Ayelet Sheffey, *America's Nightmare of Never-Ending Subscriptions*, Business Insider (Oct. 19, 2024), https://www.businessinsider.com/america-subscriptions-nightmare-recurring-payments-cancellation-company-tricks-trap-customers-2024-10?utm_source=chatgpt.com.

[9] Fed. Trade Comm'n, *Shedding Light on Dark Patterns: An FTC Report on How Manipulative Design Is Used Against Consumers*, at 1 (Sept. 14, 2022),

consultancy, defines a dark pattern as "a design pattern that prompts the user to take an action that benefits the company employing the pattern by deceiving, misdirecting, shaming, or obstructing the user's ability to make another (less profitable) choice."[10]

27.    The below image provides examples of commonly employed dark patterns:[11]



https://www.ftc.gov/system/files/ftc_gov/pdf/P214800+Dark+Patterns+Report+9.14.2022+-+FINAL.pdf.

[10] Maria Rosala, *Deceptive Patterns in UX: How to Recognize and Avoid Them*, Nielsen Norman Group (Dec. 1, 2023), https://www.nngroup.com/articles/deceptive-patterns/.

[11] Sarbashish Basu, *What is a dark pattern? How it benefits businesses- Some examples*, H2S MEDIA (Dec. 19, 2019), https://www.how2shout.com/technology/what-is-a-dark-pattern-how-it-benefit-businesses-with-some-examples.html.

28.    As the FTC explains, "dark patterns often take advantage of consumers' cognitive biases to steer their conduct or delay access to information needed to make fully informed decisions."[12] The below image provides examples of cognitive biases, including some that Mindvalley exploits in its enrollment, cancellation, and refund processes:



29.    As the subscription industry has grown, so too has the use of dark patterns. According to the FTC:

> For decades, unscrupulous direct mail marketers and brick-and-mortar retailers have relied on design tricks and psychological tactics . . . to get consumers to part with their money or data. As more and more commerce has moved online, so too have these manipulative design practices—termed 'dark patterns'—only grown in scale and sophistication, creating ever greater challenges for consumers.[13]

---

[12] FTC, *Shedding Light on Dark Patterns, supra* n.9, at 2.

[13] FTC, *Shedding Light on Dark Patterns*, *supra* n.9, at 17.

30.    Mindvalley has engaged in these kinds of subscription practices with great success. Publicly available evidence suggests Mindvalley generates $150 million in annual revenue, with a "40% annual growth rate."[14] Mindvalley advertises a "community of more than 10 million people (and expanding)[.]"[15]

**B.    Mindvalley's Enrollment Process Violates the ARL.**

31.    Mindvalley has unique access to its historical enrollment pages. At all relevant times, Mindvalley funnels consumers to a universal payment page through two materially identical enrollment flows: one for consumers subscribing to a general membership, and one subscribing to a membership through a specific course.

32.    The two flows, which lead consumers to the same payment page, do not differ materially in the substance of the disclosures they provide to prospective customers or their concealment and/or admission of material facts that consumers are intended to rely on when signing up for a Mindvalley subscription.

**1.    General Membership Enrollment Flow**

33.    On navigating to mindvalley.com, consumers are immediately solicited for membership, with the promise of "[a] better you every day" and a prominently displayed offer to "Become a member," as shown on the following page:

---

[14] https://stripe.com/en-mx/customers/mindvalley.

[15] https://careers.mindvalley.com/manifesto.



34.    Clicking the "Become a member" button directs consumers to Mindvalley's general membership enrollment page (the "General Enrollment Page"). On arriving, the consumer is presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the consumer to "Become a member":

11



35.     Clicking on this button does not navigate to another web page. Instead, the button is a "jump link" designed to immediately propel the consumer to a purchase solicitation at the bottom of the same web page. This "jump link," which scrolls down the web page in less than one second, bypasses all intervening information and, by design, deprives the consumer of the chance to review the page's full content. This tactic obscures facts that are material to consumers' ability to make intelligent decisions in the selection of products or services and instead pushes the consumer toward an immediate transaction. Below is a reproduction of what consumers see after clicking the "Become a member" button:[16]

---

[16] This rapid scroll down to the enrollment link bypasses all content located between the top of the page and the payment link. This additional content is intentionally hidden from consumers.



36.    Mindvalley unlawfully misrepresents its refund policy as "100% Risk-Free: Cancel within 15 days, one-click." This representation is untrue for at least two reasons. *First*, Mindvalley customers seeking a refund must not only cancel, but must also affirmatively request a refund. *Second*, as will be shown below, affirmatively requesting that refund is not a matter of "one-click," but a lengthy process requiring the consumer to navigate numerous windows and dark patterns. Mindvalley's description of its refund policy is a material misrepresentation connected with the sale of Mindvalley's subscriptions which Mindvalley knows or should reasonably know is untrue and misleading.

37.    Mindvalley's solicitation omits, conceals, and suppresses additional material facts to deceive consumers and prevent them from making an informed decision. Mindvalley fails to clearly and conspicuously disclose a description of the subscription subject to renewal (for example, by informing consumers that the subscription will automatically renew until canceled), the amount of future charges, the frequency of charges, the deadline by which consumers must act to prevent or stop further charges, or the cancellation mechanism. Gen. Bus. L. § 527-a.1.a. Based on the General Enrollment Page, a reasonable consumer would understand Mindvalley to be offering a one-time, fixed-term membership of either one month or one year. In truth, no matter

13

what option the consumer selects, at the end of the specified term Mindvalley will automatically re-enroll the consumer for an additional subscription term.

38.     Worse, what little information Mindvalley does provide is presented deceptively. Though it offers both "Monthly" and "Yearly" plans, Mindvalley pre-selects a one-year term to lock in a longer commitment at a higher price, and employs dark patterns to take advantage of consumer inertia to have consumers default to the yearly plan (*e.g.*, highlighting the 1-year option in bright purple against the plain black-and-white of the monthly option, deploying a bright green box to advertise the "savings" of the 1-year option, placing both "yearly" and "monthly" in vanishingly small text obscured by attractive slogans and a brightly colored invitation to enroll). Mindvalley also does not provide a link to its terms and conditions, depriving consumers of an easily accessible means of learning more about Mindvalley's offers.

39.     Mindvalley's solicitation banner fails to obtain the consumer's affirmative consent. Its misrepresentation of a "100% risk-free" cancellation policy, omission of the automatic renewal offer terms and use of deceptive dark-pattern design to steer consumers into the pre-selected year-long plan all further operate to deceive prospective customers.

40.     When consumers click on the "Join Membership" button, they are taken to the Mindvalley payment page, described in greater detail below. *See infra* § C.

### 2.     Course-Specific Enrollment Flow

41.     The course-specific enrollment flow does not materially differ from the general enrollment flow described above. Nor does this enrollment flow vary materially across different courses. Like the general enrollment flow, it operates to deceive prospective customers.

42.     The layout of the course-specific enrollment page (the "Course-Specific Enrollment Page") does not materially differ from the General Enrollment Page. On arriving, the

consumer is similarly presented with a single, centrally located, and brightly colored button in high contrast with its background, inviting the consumer to "Join the program":



43.    Mindvalley then deploys the same "jump link" tactic it uses on its General Enrollment Page. Here, too, clicking on the "Join the program" button does not take the consumer to a separate page. Instead, the button is another "jump link," which propels the consumer directly to a purchase solicitation near the bottom of the same page. As on the General Enrollment Page, this jump occurs almost instantaneously, skipping all intervening content. By collapsing the page in this way, Mindvalley deprives consumers of an opportunity to review the page's content before being funneled into a purchase decision.

15

44.     The first section the consumer lands on, reproduced below, features a large promotional banner styled as an invitation to purchase a Mindvalley membership. This banner omits all automatic renewal offer terms. Instead, consumers are instructed to "[b]ecome a Mindvalley member now, and begin your transformational journey":



45.     Directly beneath this banner is the purchase solicitation, which is reproduced on the following page:

16



46.    The Course-Specific Enrollment Page's purchase solicitation does not materially differ from the purchase solicitation on the General Enrollment Page.

47.    First, the Course-Specific Enrollment Page's purchase solicitation promises, word-for-word, the same benefits of membership, including the exact same misrepresentation of the Mindvalley refund policy: "100% Risk-Free: Cancel within 15 days, one-click." On the following page are the representations from the General Enrollment Page (on the left) and the Course-Specific Enrollment Page (on the right):

**What's included:**

✔ 100+ Courses from World-Class Trainers

✔ AI-Tailored Learning: Personalized just for you

✔ Exclusive Network: Connect, grow, and build friendships

✔ 100% Risk-Free: Cancel within 15 days, one-click

**What you get:**

✔ 100+ Courses from World-Class Trainers

✔ AI-Tailored Learning: Personalized just for you

✔ Exclusive Network: Connect, grow, and build friendships

✔ 100% Risk-Free: Cancel within 15 days, one-click

48.     Mindvalley's actual refund policy—requiring the consumer to both cancel and affirmatively request a refund—does not vary based on whether the consumer enrolled through the General Enrollment Page or the Course-Specific Enrollment Page. Mindvalley's identical misrepresentations are thus both untrue for the same reasons and violate the ARL in the same way.

49.     As on the General Enrollment Page, the solicitation banner on the Course-Specific Enrollment Page omits several material facts in a way that deceives consumers and prevents them from making an informed decision. Mindvalley fails to clearly and conspicuously disclose a description of the subscription subject to renewal (for example, by informing consumers that the subscription will automatically renew until canceled), the amount of future charges, the frequency of charges, the deadline by which consumers must act to prevent or stop further charges, or the cancellation mechanism. Gen. Bus. L. § 527-a.1.a.

50.     As with the General Enrollment Page, a reasonable consumer reviewing Mindvalley's purchase solicitation would thus understand Mindvalley to be offering a one-time, fixed-term membership of either one month or one year. In truth, no matter what option the consumer selects, at the end of the specified term, Mindvalley will automatically re-enroll the consumer for an additional subscription term.

51.     Mindvalley again pre-selects the "membership yearly" for the consumer and again employs deceptive dark patterns (highlighting the yearly membership in bright orange, as opposed

to the dull gray of the monthly membership, and presenting the yearly option in a larger box). Here, too, no link to Mindvalley's Terms and Conditions is provided.

52.    As on the General Enrollment Page, consumers are then presented with a "Join membership" button, which directs them to Mindvalley's payment page, which is used for both general enrollment and course-specific consumers (the "Payment Page").

53.    Mindvalley's solicitation banner fails to obtain the consumer's affirmative consent. Its misrepresentation of the automatic renewal offer terms and its use of deceptive dark-pattern design to steer consumers into the pre-selected year-long plan further operate to deceive prospective customers.

54.    When consumers click on the "Join Membership" button, they are taken to the universal Mindvalley payment page, described in greater detail below. *See infra* § C.

**C.    Mindvalley's Payment Page Violates the ARL**

55.    Mindvalley's Payment Page—which is the same for all prospective Mindvalley customers—is reproduced on the following page:



56.    This payment page violates the ARL in multiple ways. Once again, Mindvalley misrepresents its refund policy. Under the heading "Refund / Cancellation policy," Mindvalley reassures the consumer to "Feel safe. 15 days for a Full refund[.]" This is misleading in two ways. *First*, Mindvalley's heading conflates "Refund" and "Cancellation" in a manner misleading to a reasonable consumer, who would naturally understand based on this language that cancellation within fifteen days would trigger the refund of their membership fee. *Second*, Mindvalley's promise of "15 days for a Full refund" under a heading containing the words "Cancellation policy" is deceptive, because canceling within 15 days will not, in fact, trigger a refund. Mindvalley's misleading statements violate the ARL.

20

57. Moreover, Mindvalley's automatic renewal offer terms are not presented clearly and conspicuously. Instead, they are concealed on the payment page. They are hidden at the bottom corner of the page, in very small, gray text in low contrast to a white background. The eye is instead drawn away from the disclosure, towards the brightly colored "Subscribe" button. As with Mindvalley's enrollment page, the payment page's design *deemphasizes* the notice text, rather than making it ***conspicuous***. Mindvalley's "disclosure" is not in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks in a manner that clearly calls attention to the language. Gen. Bus. L. § 527.2. Mindvalley's payment page uses the "deliberate misdirection" dark pattern to prevent consumers from making an informed choice. Mindvalley's intentional design choices that conceal material facts violate the ARL.

58. Even if Mindvalley's disclosure was clear and conspicuous (rather than concealed), it also omits several required terms under the ARL. First, Mindvalley fails to include a description of the product or service subject to renewal (for example, by informing consumers that the subscription will renew until canceled). Second, Mindvalley does not state the frequency of charges. Third, Mindvalley says "[c]ancel anytime" but does not provide any description of its cancellation mechanisms. Fourth, Mindvalley does not state the recurring charges that will be charged to the consumer, instead stating only that the membership will renew "at the current rate"—a number not disclosed anywhere on the Payment Page. Fifth, Mindvalley does not state the deadline by which consumers must act to prevent or stop further charges. Sixth, Mindvalley omits the length of the automatic renewal term, stating only that renewal will take place "each billing period" and "at each renewal, per your plan's terms." Because Mindvalley pre-selects a one-year renewal period, *see supra* ¶¶ 38, 51, rather than prompt consumers to select the length of

the term, this is an omission of a material fact—the length of the subscription. The only reference to the length of the billing period is the word "yearly," written in small, low-contrast font and placed at the opposite corner of the screen—a design choice that further serves to conceal the length of the billing period. All of these design choices violate the ARL. Gen. Bus. L. § 527-a.1.a.

59.     Nor does Mindvalley obtain consumers' affirmative consent to the automatic renewal offer terms before charging them, in violation of the ARL. Gen. Bus. L. § 527-a-1.b.

60.     Mindvalley also does not provide any clear, conspicuous link to its Terms & Conditions, and the link it does provide is not in visual proximity to the "Subscribe" button. Instead, the link is placed on the bottom left corner of the payment page (the opposite side of the page from the Subscribe button), in small type and light gray font in low contrast with the white background. It is not underlined or in any way designed to draw the attention of the consumer— even the title of the link ("Terms" rather than "Terms & Conditions") is designed to be as small and inconspicuous as possible. A reproduction of the Payment Page demonstrating the placement of the "Terms" link is shown on the following page:



61.     As shown, a prospective Mindvalley customer can, by design, complete the entire enrollment process without ever seeing a clear and conspicuous disclosure of the automatic renewal offer terms or other information required by the ARL. Through these strategic omissions and its extensive use of deceptive "dark pattern" designs, Mindvalley manipulates consumer behavior to maximize profit, rather than disclose all material facts that would allow consumers to make an informed choice, in violation of the ARL.

62.     Due to Mindvalley's ARL violations, Plaintiff's Mindvalley subscription was an "unconditional gift." Gen. Bus. L. § 527-a.2.

**D.**    **Mindvalley's Post-Purchase Acknowledgment Email Violates the ARL**

63.    After a customer signs up for a Mindvalley membership, Mindvalley sends them an email with the subject line "Welcome to Mindvalley." An exemplar is shown below:



64.    Mindvalley's post-enrollment acknowledgment email also violates the ARL. It does not include, in a manner that is capable of being retained by the consumer, the terms of the automatic renewal agreement, the amount of costs that will be charged, the frequency of charges, the deadline by which the consumer must act to prevent or stop further charges, or any description of its cancellation mechanisms. Gen. Bus. L. § 527-a.1.c.(i)–(v).

24

65.     Further, the "Unsubscribe" link in the above email does not direct the consumer to a page to cancel their subscription but instead directs the consumer to a page to manage the frequency of emails they receive from Mindvalley.

**E.      Mindvalley's Cancellation Process is Unconscionable, Unfair, Deceptive, Abusive, and Unlawful.**

66.     Mindvalley repeatedly represents that a consumer can "cancel anytime before renewal to avoid future charges," and that cancellation can be effectuated with "one-click." Even setting aside Mindvalley's practice of reactivating accounts after cancellation and resuming billing, this representation omits the material fact, which consumers could not reasonably know, that Mindvalley's cancellation process is deliberately designed to obstruct cancellation. Mindvalley's representations regarding its cancellation process are thus untrue and misleading.

67.     To cancel, consumers must first navigate to Mindvalley's home page and log into their account. The home page is reproduced below: Then, the consumer must (1) hover their mouse above a tiny, unlabeled icon on the top right of the home page, as reproduced on the following page and marked with a red arrow for clarity:

25



68.    From there, the consumer must (2) select "Account" from the pop-up menu that appears below the icon. That menu is reproduced on the following page:



69.     Once the consumer has reached their account page, they must (3) select "Billing & Subscriptions" from a list of seven options:



70.    The default view of the "Billing & Subscriptions" page, reproduced below, does not mention cancellation and provides no guidance on cancellation. A bold-faced header at the bottom of the page instead invites consumers to "explore other products."



71.    The consumer must (4) click on "Subscription Settings," under the Active Subscriptions box. When clicked, the box expands, presenting two options, "Request Refund" and "Cancel Subscription," as shown on the following page:

28



72.     The consumer must then (5) click on "Cancel Subscription," which takes them to another page which pushes consumers to "[s]tay now and keep your exclusive rate" and invites them, through a highlighted button, to "Explore More Options" rather than "Continue to Cancellation," as shown on the following page:

29



73.    If the consumer (6) clicks "Continue to Cancellation," they are presented with a pop-up that itself requires two additional "clicks" – the consumer must (7) "Tell [Mindvalley] Why You're Leaving" and (8) select a button confirming that they understand that canceling will deprive them of access to "premium features and my progress after my current billing period ends." Until the consumer completes both of these tasks, the Cancel Subscription button is grayed-out, inactive, and unusable, while a "Nevermind, I'm Staying"[17] button is active, and highlighted to draw the consumer's attention. This pop-up is reproduced on the following page.

---

[17] Clicking on the "Nevermind, I'm Staying" button returns the consumer to the "Billing & Subscriptions" page, forcing the consumer to repeat over half the process if they wish to cancel.



74.    Only if the consumer selects both buttons are they finally presented with a "Cancel Subscription" button that, when (9) clicked by the consumer, finally cancels their subscription, as shown on the following page:



75.     Mindvalley's nine-step process for cancellation is specifically, intentionally, and willfully designed to thwart cancellations and refund requests—a "roach motel" dark pattern—that prevents customers from canceling subscriptions and stopping recurring billing.

**F.      Mindvalley's Long History of Injurious Billing and Cancellation Practices**

76.      Mindvalley's actions have harmed consumers throughout New York and beyond, resulting in legions of consumers voicing their discontent online. Below is merely a small sampling of negative reviews left by subscribers regarding Mindvalley's unscrupulous practices:



**Do not give your money to this company**

Do not give your money to this company, or if you do beware. They have a 15-Day trial period where you pay $399 to sign up for an annual membership. I had reviewed their material and cancelled on day 13 and they sent me a "your subscription has been cancelled" email. Then I had been waiting for the charges to be reversed but they never were. Then about a week later, I contacted Customer Support....get this...they said, "Well, there's another location on the website you need to go to cancel your trial subscription." I sent them a copy of the email they sent me and they said, "I'm sorry, you are beyond the 15-day cancellation period and do the tax reason and some other BS, we can't refund your money. This company has deceptive sales practices and is not honorable. I suggest you be careful who you put your money with.



**Charged me after cancellation of membership**

This guys are horrible..there app doesn't work properly. I had cancelled my membership months before the due date and they still debited my account and now refuse to refund my money. After writing to them they cancelled my membership. On the app it is showing cancelled twice and still not refunding money. This is ridiculous



**Sadly money hungry scammers :(**

Requested a refund within the refund window. Didn't go through. By the time I realised was after the window had expired. No help from customer service. A scam.



**Mindvalley is fooling you on purpose**

Vishen is not a badass. He is a shifty sales guy. His business model is to auto renew your membership. You don't notice and when you do you have payed 300 dollars a year for two years without even using the content. Mindvalley is in it for the money. Your money. If they had been in the business to help people they wouldn't have earned their money on fooling people to buy products that they do not want. Do yoga and qigong instead. It's practically free. Instead of having a former engineer tell you how to hold an energy ball for hundreds of dollars



**Unauthorised credit card transactions**

Mind Valley have made an unauthorised charge to my credit card. I have no subscription or any agreement with mind valley for them to make a charge. I contacted them through their "support" link and they declined to make a refund. This makes their action blatant theft and not accidental error. Their advertised intentions to help people are at complete odds with their action of theft. I need the money back to buy food.



**Scammy auto renewal practise.**

They sent me a link to cancel renewal, which never worked. Then they went ahead and charged the renewal. When I contacted them, on the day they charged, they basically replied "too bad the link didn't work, but we won't refund you either way. Scammy practise.

 ✓ Verified

**I've been trying to unsubscribe which...**

I've been trying to unsubscribe which seems virtually impossible. You don't get an option to when you want to change the settings of your subscription. Such a spamming business...



**I had a horrible experience with...**

I had a horrible experience with mindvalley. they charged me for a new subscription without authorization. the customer service is horrible. I have not received anything that stated they would renew. I never checked any auto-renew box and you can only communicate through whatsapp. I believe that is illegal. I saw that there are at least 100 complaints through the better business bureau. Anyone else has done anything about this?



**Got charged with the auto-renewal**

Got charged with the auto-renewal. There is no button on the site to turn off auto-renew. Their customer service is AI (in training) that does not help but refers you to their site. Cancelled membership, got charged for a whole year. No refund, canceled within 15 days.

34



**Watch out from subscription and...**

Watch out from subscription and renewals. The customer experience is horrible!

The idea of Mindvalley is nice. I signed up hoping I'll use it more. I didn't hence didn't even occur to me to <mark>renew</mark>. To my surprise I get an email that I was charged $300 what??

I was sure I can just reach out because they can see I never used the system and was just charged today another $300. Sure enough, like the other reviews here say, they tell you "there is nothing we can do to refund this". Now I do get that if someone comes weeks or months later they cant refund but I contacted them within hours of the renewal that I didn't agree to. This company is probably going under and holding on to people that didn't realize they were on auto <mark>renew</mark>. Triple check and I would unsubscribe if I was you reading this. You can always decide to subscribe again.



**Greedy**

Had the subscription for a year and didn't realize it was going to <mark>renew</mark>. When I saw the charge I asked them to cancel and refund the renewal. They already had $299 for the first year which they could well see was barely used, only in the beginning. No refund. Very disappointing for people who are supposedly promoting mindfulness and wellbeing. I see now what promotes their wellbeing.



**Fraudulent billing practices and ZERO phone support**

Be very careful dealing with this company. Their material is highly questionable and they extend your membership for $299 automatically and refuse to cancel it even if you try to do it on the same day the membership is renewed. I foolishly subcribed to their app, barely used it, did not know that it was on auto <mark>renew</mark> and got stuck with another year of worthless non-cancelable membership. Credit card dispute is ongoing. This screams FRAUD. Totally dishonest and horrible customer service. Can't speak with anyone on the phone. Communication is through email only with 2 days lag time. Beware and stay away.



**BEWARE! Dishonest & No Customer Care**

I signed up a year ago, not realizing that the membership auto-renewed. Today I received a receipt for another subscription. I contacted customer service immediately saying that I want to cancel and be refunded. I was told auto <mark>renew</mark> is not refundable and I should have cancelled when I was notified that the membership was renewing. I was NOT notified. The agent told me he would transfer me and to stay on the chat. No one got back to me. For a platform marketed about spirituality and personal growth, the lack of care for their customers is extremely distasteful

35

**G.     How Mindvalley's Scheme Injured Plaintiff**

77.     Ms. Larsen paid $299.00 for a Mindvalley membership on or about December 24, 2023.

78.     At the time Ms. Larsen enrolled, Mindvalley did not clearly and conspicuously disclose that her enrollment would automatically renew at the end of her subscription term and would continue to renew until she cancelled.

79.     Dissatisfied with Mindvalley's programming, Ms. Larsen sought a refund of her initial purchase.

80.     Mindvalley refused to provide a refund.

81.     Unable to obtain a refund of her initial purchase, Ms. Larsen attempted to cancel her Mindvalley membership, but was unable to do so.

82.     Ms. Larsen did not intend to purchase another one-year Mindvalley membership.

83.     On or about December 23, 2024, Mindvalley unlawfully charged Ms. Larsen $199.00 for an additional, unauthorized one-year Mindvalley membership.

84.     That same day, Ms. Larsen noticed this unauthorized charge on her credit card and contacted Mindvalley to seek a refund. Mindvalley refused to provide one.

85.     Due to Mindvalley's refusal, Ms. Larsen had to contact her payment provider, PayPal, to secure a refund of Mindvalley's unlawful charge. Later that day, PayPal refunded Ms. Larsen $199.00.

86.     For such time until Ms. Larsen's funds were returned to her by her payment provider, she was unlawfully deprived of those funds by Mindvalley. Plaintiff was injured when she was unlawfully deprived of use of those funds until she could secure a refund from her payment provider.

36

87. Ms. Larsen also lost time attempting to secure a refund of the funds she was unlawfully deprived of by Mindvalley because she had to spend that profitable time calling Mindvalley and then her payment provider to reverse Mindvalley's fraudulent charge.

88. Having lost this time because of Mindvalley's deceptive conduct and false advertising, Ms. Larsen is entitled to recover statutory damages under GBL §§ 349 and 350. *See In re Gen. Motors LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 328–29 (S.D.N.Y. 2018) (lost time injury entitles plaintiff to statutory damages).

89. Plaintiff was injured when she was forced to use personal time to secure this refund. *Id.* ("The Court concludes . . . that Plaintiffs may recover for lost *personal* time under the GBL.") (emphasis original).

90. Ms. Larsen was also injured by Mindvalley's subscription practices because, had she known the truth about Mindvalley's intentionally misleading subscription practices, she would not have purchased a Mindvalley course or membership.

91. Plaintiff intends to purchase products and services in the future for herself from online wellness and self-help platforms, including Mindvalley, as long as she can gain some confidence in Mindvalley's representations about its products and services and subscription practices.

## RULE 9(B) ALLEGATIONS

92. To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

93. **WHO**: Mindvalley sells services to consumers in New York through an unconscionable, unfair, deceptive, abusive, and unlawful subscription scheme by making the material misrepresentations and omissions alleged in detail above in violation of New York's

37

automatic renewal law and consumer protection statutes and the common law, including with respect to Mindvalley's automatic renewal policy and cancellation process, leaving many consumers who sign up for a Mindvalley service paying for subscriptions that they do not want.

94.    **WHAT**:

- **Mindvalley fails to make clear and conspicuous disclosures.** Mindvalley's payment page and enrollment banners do not clearly and conspicuously disclose the material terms of any automatic renewal offer, including a description of the product or service subject to renewal (for example, by informing consumers that the subscription will renew until canceled), the amount of future charges, the frequency of charges, the deadline by which consumers must act to prevent or stop further charges, or the cancellation mechanism.

- **What little information Mindvalley does disclose is designed to be hidden from consumers.** Where Mindvalley does provide limited disclosures, they are displayed in small, low-contrast text, intentionally bypassed by "jump links," or obscured by brightly colored graphics, banners, and calls to action that deliberately draw the consumer's attention elsewhere. These design choices intentionally hide important terms from consumers and deprive them of the ability to make an informed choice.

- **Mindvalley deliberately obstructs consumers' efforts to cancel.** Mindvalley buries its cancellation mechanism deep within its account portal, requiring consumers to navigate multiple menus to find it. Even when consumers do find the cancellation mechanism, they are presented with pop-ups and misleading screens that discourage cancellation through misleading prompts and extra steps. This is a classic "roach motel" dark pattern design: easy to get in, but hard to get out.

- **Mindvalley's post-purchase acknowledgment emails omit material automatic renewal offer terms and information on cancellation.** Mindvalley's post-purchase emails omit automatic renewal offer material terms, including providing no description of how to cancel.

95.    **WHERE**: Mindvalley's deceptive and unlawful subscription scheme is conducted through its website, mobile/tablet/desktop applications, and electronic communications with customers.

96.    **WHEN**: Mindvalley has been engaging in its deceptive and unlawful subscription scheme for years, and the scheme is ongoing. For a specific example, Mindvalley used its deceptive and unlawful subscription scheme when Plaintiff enrolled in Mindvalley offerings on December

38

24, 2023, and when it charged Plaintiff's account without authorization on December 23, 2024. Information as to precisely how long Mindvalley's deceptive practices have been taking place is exclusively in the possession of Mindvalley. However, publicly available records reviewed by Plaintiff's counsel show that consumers began reporting injuries from Mindvalley's deceptive and unlawful practices at least as early as 2021.

97. **WHY**: Mindvalley uses its unconscionable, unfair, deceptive, abusive, and unlawful subscription scheme to trap its customers into paying for Mindvalley subscriptions. As a direct result of this scheme, Mindvalley has successfully reaped tens of millions of dollars in unlawful charges at the expense of unsuspecting customers.

98. **HOW**: Mindvalley conducts its deceptive and unlawful subscription scheme by making the material misrepresentations and omissions in violation of New York consumer protection law and the common law alleged in detail above.

## CLASS ACTION ALLEGATIONS

99. Plaintiff brings this action on her own behalf and additionally, pursuant to Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class that is preliminarily defined as all Mindvalley customers in New York (including customers of companies Mindvalley acts as a successor to) who were automatically enrolled into and charged for at least one month of Mindvalley membership by Defendant at any time from the applicable statute of limitations period to the date of judgment (the "Class").

100. As alleged throughout this Complaint, the Class's claims all derive directly from a single course of conduct by Defendant. Defendant has engaged in uniform and standardized conduct toward the Class and this case is about the responsibility of Defendant, at law and in equity, for its knowledge and conduct in deceiving its customers. Defendant's conduct did not meaningfully differ among individual Class Members in its degree of care or candor, its actions or

39

inactions, or in its false and misleading statements or omissions. The objective facts on these subjects are the same for all Class Members.

101.   Excluded from the Class are Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant. Also excluded are federal, state and local government entities; and any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff.

102.   Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Class and/or add Subclasses, when Plaintiff files her motion for class certification.

103.   Plaintiff does not know the exact size of the Class since such information is in the exclusive control of Defendant. Plaintiff believes, however, that the Class encompasses thousands of consumers whose identities can be readily ascertained from Mindvalley's records. Accordingly, the members of the Class are so numerous that joinder of all such persons is impracticable.

104.   The Class is ascertainable because its members can be readily identified using data and information kept by Defendant in the usual course of business and within its control. Plaintiff anticipates providing appropriate notice to each Class Member in compliance with all applicable federal rules.

105.    Plaintiff is an adequate class representative. Plaintiff's claims are typical of the claims of the Class and do not conflict with the interests of any other members of the Class. Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by Defendant. Further, Plaintiff and members of the Class sustained substantially the same injuries and damages arising out of Defendant's conduct.

106.    Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff has retained competent and experienced class action attorneys to represent her interests and those of the Class.

107.    Questions of law and fact are common to the Class and predominate over any questions affecting only individual Class members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a.  Whether Defendant's conduct violates the ARL;

b.  Whether Defendant's conduct violates New York Gen. Bus. L. §§ 349 and 350;

c.  Whether Defendant's conduct violates the applicable common law doctrines;

d.  Whether Defendant was unjustly enriched as a result of its conduct;

e.  Whether Class Members have been injured by Defendant's conduct;

f.  Whether, and to what extent, equitable relief should be imposed on Defendant to prevent them from continuing its unlawful practices; and

g.  The extent of class-wide injury and the measure of damages for those injuries.

108.    A class action is superior to all other available methods for resolving this controversy because: (1) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be

dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; (2) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendant's conduct; (3) Defendant has acted or refused to act on grounds generally applicable to all Class Members; and (4) questions of law and fact common to the Class predominate over any questions affecting only individual Class Members.

109.    Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

    a.   Whether Defendant's conduct violates the ARL;

    b.   Whether Defendant's conduct violates New York Gen. Bus. L. §§ 349 and 350;

    c.   Whether Defendant's conduct violates the applicable common law doctrines;

    d.   Whether Defendant was unjustly enriched as a result of its conduct;

    e.   Whether Class Members have been injured by Defendant's conduct;

    f.   Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices.

110.    Accordingly, this action satisfies the requirements set forth under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

## COUNT I

### NEW YORK GENERAL BUSINESS LAW § 349

111.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

112.    Plaintiff brings this claim under GBL § 349 on her own behalf and on behalf of each member of the Class.

113.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Gen. Bus. L. § 349.

114.    Defendant's subscription scheme and its associated practices are consumer-oriented in that they are directed at members of the consuming public.

115.    By engineering and implementing the unconscionable, unfair, deceptive, abusive, and unlawful subscription scheme alleged in this complaint, Defendant engaged in, and continues to engage in, deceptive acts and practices in violation of New York's GBL § 349.

116.    Through its unconscionable, unfair, deceptive, abusive, and unlawful subscription scheme as alleged throughout this Complaint, Defendant engaged in deceptive acts or practices that violated GBL § 349 by making the material misrepresentations and omissions alleged herein including with respect to automatic renewal and cancellation, leaving many consumers who sign up for a Mindvalley service paying for subscriptions that they do not want. Defendant systematically misrepresented, concealed, suppressed, and omitted material facts relating to the automatic renewal and cancellation of Mindvalley products and services in the course of its business.

117.    By violating New York's ARL as alleged throughout this Complaint, Defendant is liable to Plaintiff and the Class for committing a deceptive act.

118.    The aforementioned acts are unconscionable, unfair, deceptive, abusive, and unlawful and are contrary to the public policy of New York, which aims to protect consumers.

119.    Defendant knew or should have known that its conduct violated GBL §§ 349, 527, and 527-a.

120.    Defendant's conduct constituted willful violations of GBL §§ 349, 527, and 527-a.

43

121. As a direct and proximate result of Defendant's unlawful and deceptive subscription scheme and associated practices, Plaintiff and the Class have suffered injury and monetary damages in an amount to be determined at the trial of this action and upon information and belief, believed to exceed $50 million.

122. Plaintiff and the members of the Class further seek equitable relief against Defendant. Defendant's violations present a continuing risk to Plaintiff and Class Members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Defendant's unconscionable, unfair, deceptive, abusive, and unlawful acts or practices occurred repeatedly in Defendant's trade or business and significantly impact a substantial portion of the purchasing public as actual or potential customers of Defendant. Pursuant to GBL § 349, this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to refund to Plaintiff and the Class all fees wrongfully assessed and/or collected.

## COUNT II

### NEW YORK GENERAL BUSINESS LAW § 350

123. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

124. Plaintiff brings this claim under GBL § 350 on her own behalf and on behalf of each member of the Class.

125. New York's false advertising law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Gen. Bus. L. § 350.

126. Defendant's actions as set forth herein occurred in the conduct of business, trade, or commerce under GBL § 350.

127. Through its unconscionable, unfair, deceptive, abusive, and unlawful subscription scheme as alleged throughout this Complaint, Defendant engaged in false advertising that violated GBL § 350 by making the material misrepresentations and omissions alleged herein including with respect to automatic renewal and cancellation, leaving many consumers who sign up for a Mindvalley service paying for subscriptions that they do not want. Defendant systematically misrepresented, concealed, suppressed, and omitted material facts relating to the automatic renewal and cancellation of Mindvalley products and services in the course of its business.

128. By engineering and implementing the unconscionable, unfair, deceptive, abusive, and unlawful subscription scheme alleged in this complaint, Defendant engaged in, and continues to engage in, false advertising in violation of New York's GBL § 350.

129. The aforementioned acts are unconscionable, unfair, deceptive, abusive, and unlawful and are contrary to the public policy of New York, which aims to protect consumers.

130. Defendant knew or should have known that its conduct violated GBL §§ 350, 527, and 527-a.

131. Defendant's conduct constituted willful violations of GBL §§ 350, 527, and 527-a.

132. As a direct and proximate result of Defendant's unlawful and deceptive subscription scheme and associated practices, Plaintiff and the Class have suffered injury and monetary damages in an amount to be determined at the trial of this action and upon information and belief, believed to exceed $50 million.

133. Plaintiff and the members of the Class further seek equitable relief against Defendant. Defendant's violations present a continuing risk to Plaintiff and Class Members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest. Defendant's unconscionable, unfair, deceptive, abusive, and unlawful acts or

practices occurred repeatedly in Defendant's trade or business and significantly impacts a substantial portion of the purchasing public as actual or potential customers of Defendant. Pursuant to GBL § 350, this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to refund to Plaintiff and the Class all fees wrongfully assessed and/or collected.

**COUNT III**

**CONVERSION**

134.    Plaintiff incorporates by reference all preceding and subsequent paragraphs.

135.    Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

136.    Plaintiff and the Class own and have a right to possess the money that is in their respective bank accounts, internet payment accounts, and/or credit cards.

137.    Defendant substantially interfered with Plaintiff and the Class's possession of this money by knowingly and intentionally making unauthorized charges to their bank accounts, internet payment accounts, and/or credit cards for Mindvalley subscriptions.

138.    Plaintiff and the Class never consented to Defendant's taking of this money from their bank accounts, internet payment accounts, and/or credit cards.

139.    Defendant wrongfully retained dominion over this monetary property and/or the time-value of the monetary property.

140.    Plaintiff and the Class have been damaged by Defendant's wrongful taking and/or possession of such money from their bank accounts, internet payment accounts, and/or credit cards in an amount that is capable of identification through Defendant's records.

141. By reason of the foregoing, Defendant is liable to Plaintiff and the Class for conversion in an amount to be proved at trial.

## COUNT IV

### UNJUST ENRICHMENT

142. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

143. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

144. As a result of Defendant's violations of the NY ARL, "any goods, wares, merchandise, or products" delivered to Plaintiff and the Class are "deemed an unconditional gift to the consumer . . . without any obligation whatsoever on the consumers' part." Gen. Bus. L. § 527-a.6. Any contract between Plaintiff and Defendant is therefore void and unenforceable.

145. By reason of Defendant's wrongful conduct, Defendant has benefited from receipt and maintenance of improper funds, and under principles of equity and good conscience, Defendant should not be permitted to keep this money.

146. As a result of its unjust conduct, Defendant has been unjustly enriched.

147. As a result of Defendant's conduct it would be unjust and/or inequitable for Defendant to retain the benefits of its conduct without restitution to Plaintiff and the Class. Accordingly, Defendant must account to Plaintiff and the Class for its unjust enrichment.

## COUNT V

### MONEYS HAD AND RECEIVED

148. Plaintiff incorporates by reference all preceding and subsequent paragraphs.

149. Plaintiff brings this claim on her own behalf and on behalf of each member of the Class.

150. Defendant received moneys from Plaintiff and from each member of the Class.

47

151.    As a result of Defendant's violations of the NY ARL, "any goods, wares, merchandise, or products" delivered to Plaintiff and the Class are "deemed an unconditional gift to the consumer . . . without any obligation whatsoever on the consumers' part." Gen. Bus. L. § 527-a.6. Any contract between Plaintiff and Defendant is therefore void and unenforceable.

152.    The moneys belong to Plaintiff and each member of the Class.

153.    Defendant has not returned the moneys.

154.    Plaintiff, on behalf of herself and the members of the Class, seeks the return of the moneys in an amount to be proved at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)    Issue an order certifying the Class defined above, appointing the Plaintiff as Class representative, and designating Wittels McInturff Palikovic as Class Counsel;

(b)    Find that Defendant has committed the violations of law alleged herein;

(c)    Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(d)    Enter an order granting all appropriate relief including injunctive relief on behalf of the Class under the applicable laws;

(e)    Render an award of compensatory damages of at least $50,000,000, the exact amount of which is to be determined at trial;

(f)    Issue an injunction or other appropriate equitable relief requiring Defendant to refrain from engaging in the deceptive practices alleged herein;

(g)    Declare that Defendant has committed the violations of law alleged herein;

(h)    Render an award of punitive damages;

(i)    Enter judgment including interest, costs, reasonable attorneys' fees, and expenses; and

(j)      Grant all such other relief as the Court deems appropriate.


Dated: April 23, 2026                                      **WITTELS MCINTURFF PALIKOVIC**
                                                          /s/ J. Burkett McInturff
                                                          J. Burkett McInturff
                                                          Ethan D. Roman
                                                          305 BROADWAY, 7TH FLOOR
                                                          NEW YORK, NEW YORK 10007
                                                          Tel:    (914) 775-8862
                                                          jbm@wittelslaw.com
                                                          edr@wittelslaw.com

                                                          *Counsel for Plaintiff and the Proposed Class*